IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| TINA WASHINGTON, | ) | C.A. No.: 3:25−cv−09616-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| DOUGLAS A COLLINS, Secretary, | ) | |
| Department of Veteran Affairs, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT AND JURY DEMAND

The Plaintiff, Tina Washington, by and through her attorney, Bonnie Travaglio Hunt of Hunt Law, L.L.C., hereby complain against the Defendant, the Honorable Douglas A Collins, Department of Veteran Affairs as follows:

### Nature of the Action

1. This is an action brought pursuant to the laws of the United States of America.

2. This is an action brought pursuant to Civil Rights Act and EEO laws of the United States of America.

3. This is an action brought pursuant to the Laws of the State of South Carolina.

### Parties

4. Plaintiff, Tina Washington, hereinafter referred to as the Plaintiff, is an individual who at all times relevant herein was a resident of the of the State of South Carolina.

5. At all relevant times as presented herein the Plaintiff was an employee as defined by Federal Law.

1

6.  Plaintiff is informed and believes, and based thereon alleges, that Defendant, The Honorable Douglas A Collins, Secretary of Veteran Affairs, herein referred to as the "Defendant", is, and at all times relevant herein was a governmental entity operating in the State of South Carolina. The Defendant, Collins is subject to the laws of this Court pursuant to State and Federal Law.

7.  At all relevant times as presented herein the Defendant was an employer as defined by Federal Law.

## Jurisdiction and Venue

8.  The Columbia Division is the proper venue for this action because this is the Circuit in which the Plaintiff resides and in which a substantial part of the events or omissions giving rise to the claims occurred.

9.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter presents a federal question.

10.  Jurisdiction of this cause arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Section 2000e-2(a) and Section 2000e-3(a), as amended by the Civil Rights Act of 1991 (CRA Section 91), 42 U.S.C. Section 1981A *et seq.*

## Procedural History and Factual Background

11.  Ms. Washington began her employment with VAMC on June 26, 2016.    Ms. Washington started as a staff RN and in September 2018 became the Assistant Nurse Manager.

12.  Ms. Washington has been subjected to bullying, abuse, rudeness, slander and other hostile behaviors in the Dialysis Unit since 2018.

13.   In 2020, a Fact-Finding investigation was conducted in the unit due to racial issues and hostile behaviors.   At the time, Ms. Washington was accused by Ms. Turner of catering to non-black and elite staff in the unit.   Ms. Washington informed Ms. Turner the statement was false and asked her not to repeat it.   However, Ms. Turner continued to repeat the statement to others even to patients.

14.   In 2021, Ms. Washington's Supervisor, Ms. Turner stopped coming into the dialysis unit and preferred all communications to be by email.   Ms. Turner further stopped attending staff and unit team meetings which limited her access to the dialysis unit.

15.   Ms. Turner's harassment of Ms. Washington continued.

16.   In January of 2022, Turner attempted to force Ms. Washington to resign her employed with the Agency.   Ms. Washington reported these concerns to Ms. Mustard, Ms. Turner's supervisor.   Ms. Mustard failed and refused to handle Ms. Washington's concerns.

17.   on January 5, 2022, an alleged incident occurred between Ms. Washington and another employee, Mr. Lewis.   Ms. Washington noticed that Mr. Lewis had failed to set up the swabs for testing in the dialysis unit.   Ms. Washington entered the break room remind Mr. Lewis that it was time for the patients to come off dialysis so he could begin setting up the area for swabbing the patients as assigned by the Acting Nurse Manager.   Mr. Lewis immediately started questioning "Why does he have to do the swabs" Ms. Washington explained to him that this was the assignment given to him by the charge nurse.   Mr. Lewis immediately became angry with Ms. Washington and stated that Washington was making him feel "a certain type of way."   Ms. Washington informed Lewis that she was just reminding him of his assignment and if he felt anyway that was

3

of his own doing.  Ms. Washington further reminded him that the charge nurse assigned the assignments.   Ms. Washington was aware of Mr. Lewis' frustrations, so she took the opportunity to allow him to voice his frustrations.   Ms. Washington could tell that Mr. Lewis was aggravated by his assignment.  As she was talking to him, she placed her arm on his chest and he stepped back into the wall.   Ms. Washington informed Lewis that she was not there to embarrass him she just wanted to ensure his setup for the patients was prepared.   Ms. Washington and Mr. Lewis both laughed and left the breakroom together.   Later that day, Mr. Lewis made several offhanded remarks to Ms. Washington, Ms. Washington knew these hostile statements were because he was frustrated with his assignment and that he did not want to swab the patients.   Ms. Washington and Mr. Lewis have worked together in the dialysis unit for six years.

18.    In the second week of January, Ms. Turner informed Ms. Washington that an EO complaint had been filed against Ms. Washington by Mr. Lewis.   Ms. Washington informed Ms. Turner that she did not assault him.   Ms. Turner informed Ms. Washington that she would be conducting a fact-finding.

19.    The incident was reported to the Police on January 18, 2022.  Ms. Turner informs the Police she is aware that she is required to file a factfinding.

20.    On January 18, 2022, Ms. Washington was interviewed by two VA officers on charges of assault.  Ms. Turner immediately questioned Ms. Washington on what was said.  Ms. Washington informed Ms. Turner that the investigator informed her that she would not be charged with assault.   After telling Ms. Turner this information, Ms. Turner informed Ms. Washington that "See that's why I don't like him."  Ms. Washington informed her that was not a reason to not like someone.

21.   On January 19, 2022, Ms. Washington sent her statement to Ms. Turner.

22.   On January 20, 2022, Ms. Washington was interviewed by another VA officer regarding charges of assault again and again she was informed that the there was no reason to file charges going to be filed against her as there was no evidence to prove assault.

23.   On January 21, 2022, Ms. Washington entered Virginia Turner office at 9:30-9:45 to let her know that she had a headache and needed to go home.  At that time, Ms. Turner began to discuss the investigation.  Ms. Washington informed Turner she was not there to discuss the investigation.  Turner continued to discuss the investigation included informing Ms. Washington that there was no evidence to prove an assault, so they were closing their investigation on their end.   Turner used bullying and intimidation in attempts to force Ms. Washington to resign her employment.   Turner further informed Ms. Washington that what James was putting out there was genuine and the attorneys were beginning to believe him.   Ms. Washington requested that Turner ask Lewis to come to her office so that they could discuss the incident.  Turner informed Ms. Washington no he is afraid of you, didn't you see it?  Ms. Washington informed Ms. Turner that she did not see anything because she was not given any documentation that there was a pending investigation.  Ms. Washington further informed Turner that if there was a fact-finding it was not managed professionally or in accordance with VA policy and guidelines.   Ms. Washington further asked Turner about the no-contact order because Assault was a serious charge and Mr. Lewis was still working with her. Turner did not answer.

24.     On January 25, 2022, Ms. Washington learned a racist term had been used by her direct supervisor in a conversation when referring the Ms. Washington. Ms. Washington felt like she was being subjected to harassment. Ms. Washington files her complaint regarding Ms. Turner attempting to force her resignation on January 26, 2022.

25.     When Ms. Washington realized that Turner was biased in her investigation she sent an email to Ms. Mustard regarding her concerns.

26.     The Email set forth:

"On January 21st, I entered Virginia Turner's office at approximately 0930-0945 to let her know that I had a headache and needed to go home for the rest of the day. At the time, Virginia was sitting behind her desk and somehow began talking about the investigation. I was not there to request any information about the investigation but, she began by telling me the investigation had to go up to the powers that be, and she needed to complete her POC. She said that the investigators did not find evidence to prove an assault, so they closed the case on their end. She also mentioned that the investigator told her Maurice's story matched what I said. I was surprised because she thought Maurice was coercing James to file a report against me. So, I replied, "it didn't matter what anyone said because I did not do anything intentionally to harm James". I told her there was no aggression, there was no malice intent and James did not say that he was threatened in any way. He laughed and talked, and we walked out of the breakroom together, and he did not appear to be mad at all. She said to me," You were tired of him telling you to stop making him look stupid in front of people, and he was tired of you making him feel this way in front of people. I told her that statement was not true. She continued to say that to me as if she was trying to convince me that it was true. I firmly told that was not what happened. Finally, she said that what James was putting out there would be more convincing. She said that what James was putting out there was very genuine, and everything is up to James now. She also told me that anything prior that I had to say about James goes out of the window now. She went on to say that he was putting a case out there to prove that I was mentally attacking him. She said that everything had to go through the VA's attorney for investigation now. I told Virginia, what she was saying made no sense to me and her accounts of the issue was not true. I said, "I don't see how this can go from physical assault to mental assault in less than a day." None of what she said made any sense to me. I feel like she was trying to convince me to change my story to something that she could use against me. I told her once again that what she was saying did not make any sense to me. She told me that I should go home and continue talking with my family. She was telling me that I needed to resign because this looks bad for me. I felt targeted and threatened at the same time. I was very confused by her actions and needed to get away quickly. I told her that she was making my headache worse than it already was, and I had to leave. I told her what she was saying made no sense to me and was not true. She looked at me

and said, I thought that you would want to know this. I left her office very upset and very confused.

On Saturday (1/22) morning, I called the unit to check on the wellbeing of the staff and patients. The charge nurse (Eun-Hee) stated, "Tina why are you calling? Virginia told us not to bother you for anything, she told us to call her. She said that you need to rest. I said okay and hung up. I was confused because I did not say that I did not want to be contacted by the staff, especially knowing that a snowstorm was coming.

I returned to work on Monday (1/24) morning as scheduled. I spoke with Virginia briefly on the phone but did not go over to her office. I was catching up and she said that she was doing the same.

On Tuesday (1/25) at approximately 1300, Virginia and I interviewed a new applicant for the Greenville clinic. As I was about to leave her office she said, I told Dr. Othersen, I thought you were not coming back. I told her I don't just walk off my job. I told her that I did not agree to what she was saying at the time, so I had to leave because it was upsetting to me. She said well you look rested, I said I am. She began to talk some more about the investigation and mentioned that she was going to request remediation between me and James prior to moving forward. I told her that I would like that very much.

James and I have not said anything to each other about this investigation and we have been cordial and speak to each other in passing. He has reported off to me in the daily huddle and he even offered me coffee the other morning while in the breakroom. He did not seem to be threatened or intimidated while in my presence on either of those days. This concerns me deeply because Virginia told me that he was so threatened by me until he did not want to come back to work. We have worked together for two days this week with no issues.

n my opinion Virginia is trying to use this incident with James to intimidate me into resigning from my role. This is not acceptable behavior.

27.     Ms. Mustard responded to Ms. Washington's concerns that she would reread the email and get back to her.    Ms. Mustard never responded to Ms. Washington's concerns. Because of the lack of urgency by Ms. Mustard, Ms. Washington filed a complaint with the EO office.

28.     On January 26, 2022, Porsche Bolden provided an email to Turner regarding statements that Ms. Washington allegedly stated.    This incident never occurred.

29.     On February 1, 2022, Dr. Jennifer Othersen addressed concerns regarding the functionality of the dialysis unit because of Acting Nurse Manager Virginia Turner rand Assistant Nurse Manager Tina Washington.

30.    Dr. Othersen further provided the following information:

"On Friday, 1/21/22, I was in renal clinic seeing patients. I was in Nurse Ray's office speaking to a patient when Virginia Turner came in & told me that she needed to give me an update. This was unusual as she has not spoken to me but 4-5 times over the past 6 months. She told me that Tina had to go home, she then paused and said Tina was sick. I said I hoped she didn't have COVID. She then told me that she sent Tina home and that she had told her that she needed to resign. She told me that Tina had an EEO filed against her by one of the dialysis staff and that based on that she felt that Tina needed to resign. Virginia said that she told Tina that she should go home and talk to her family about how this was affecting her health and that she should resign. She then told me that she didn't expect Tina to return to work and needed to figure out who could replace her as assistant nurse manager. I inquired {in follow up to an email that I had sent her the day before) about the fact that Virginia no longer had "Acting" listed on her Hemodialysis Nurse Manager title on the SOPs that were being redone. I told her that I felt this needed to be added back since she did not have the qualifications to be the permanent Dialysis Nurse Manager based on the VHA Directive. I then asked if there were any candidates for, as I hadn't heard anything in a while and she told me there were not. She told me that she wouldn't hire someone without VA experience. I asked if the dialysis nurse manager position was still listed on USAJOBS as I hadn't seen it - she told me that it was. I asked her to double check as I wasn't sure that the position was still actively listed."

"Additional information:

"The meeting took place in my clinic office, lasted about 15 minutes. I advised her that I have not been involved in the personnel issues within the unit and could only speak to the medical care the nurses provided and not the interpersonal interactions of the nurses she was considering to replace Tina. I als told her that I felt that Tina gave 110% effort and had the best interest of the Veterans as her goal. Virginia said that Tina was very polarizing, staff either loved her or hated her. Virginia said that the Black nurses don't like Tina as they think she is an "Uncle Tom" and that there is a large divide between the Black nurses and the "Elite" nurses. Virginia did not explain either term during the course of this conversation. She had previously used the term "Elite" in other conversations describing racial tensions within the unit. I was very uncomfortable with the conversation, including Virginia's assertion that she had told her subordinate to resign without the due process of evaluation of an EEO complaint and her use of inappropriate, derogatory racial term during the course of the conversation. Prior to this conversation, the last difficult conversation was many months prior when she was in my office venting about interactions and events involving Dr. Wallam. I advised her that I had no first hand knowledge of those incidents but what she was describing was not consistent with my interactions with him or my opinion of him. After that conversation, she did not speak to me for months. In fear of retaliation, I did not challenge her during the course of m conversation with her, but feel it is necessary to report her actions.
Jennifer Othersen, MD Chief of Nephrology

31.  As a result of Ms. Mustard's failure to address any of Ms. Washington's concerns, Ms. Washington went to the EEO office on February 3, 2022. Ms. Washington shared her concerns with Tori Thompson, the EEO Manager. Ms. Thompson read Ms. Washington's email and informed her that an investigation would be initiated, and that Ms. Washington was not to say anything to anyone else about it. During this discussion, Ms. Washington informed Ms. Thompson about her email to Ms. Mustard and due to Ms. Mustard's failure to respond Ms. Washington wanted to proceed with the EEO. On February 4, 2022, Ms. Washington emailed Ms. Thompson further details regarding the harassment. On February 7, 2022, Ms. Washington returned to the EEO office and asked Ms. Thompson what was taking so long. Ms. Thompson informed Ms. Washington that she was aware of the racial comment and that she had received an email with what the racial comment was. Ms. Washington requested to receive a copy of the email. Ms. Thompson refused to provide Ms. Washington with a copy of the email. At that time, Ms. Thompson informed Ms. Washington that she would complete the investigation and a 2nd investigation would be initiated. On February 3rd, Ms. Washington sent Ms. Thompson another email.

32.  On February 23, 2022, Turner drafts report of Contact for the Factfinding.

33.  On April 6, 2022, the 2nd investigation was initiated.

34.  On April 26, 2022, Ms. Washington's complaint results are issued. "Racial Tension and bias were dismissed by one witness but identified and documented by other witnesses in their written statements and interviews, as prevalent and continuing in the unit for at least two years after NM-Acting assumed leadership. The situation has apparently intensified in the last six-eight months according to All staff interviewed

referenced past and ongoing associated AIBs, fact findings, other attempted union grievances and investigations outside the scope of this fact finding contributing to a workplace where employees noted they feel divided, threatened, fearful and sad.

35.    The working relationship between those in key leadership positions has eroded over the past two years and appear to have rapidly declined within the last six months based on the written and verbal disclosures evident for the fact finding. The relationship has had an impact on the Hemodialysis staff to include a racial divide among staff with emphasize on the last six to eight months. Conclusion: Recommended that Fact-Finding regarding the alleged assault be resolved.

36.    On May 10th, Ms. Washington received a letter indicating that there was not substantiated evidence to support her concerns regarding the racial comment. Ms. Washington immediately went to the EEO Manager, Tori Thompson, about the results. Ms. Washington stated that she was concerned with the unsubstantiated because there was substantiated documentation. Ms. Thompson informed Ms. Washington that no EEO was initiated and that her reports to her were "Just two people talking." Ms. Washington informed Ms. Thompson that Ms. Thompson was the EEO. Ms. Thompson informed Ms. Washington that she was just the intake person. Ms. Washington left the EEO office and contacted a friend who told her to immediately contact another EEO office directly.

37.    Ms. Washington contacted the EEO office and informed them what had happened with Ms. Thompson and her failure to file an EEO complaint. The EEO office immediately filed a complaint for Ms. Washington.

38.   On May 13, 2022 , the EEO Counselor sent Ms. Washington the following information: "I will serve as the EEO counselor in the matter you reported to the Office of Resolution Management, Diversity & Inclusion (ORMDI) on May 10, 2022,  Case Number 2001-544-2022-145977 as follows:

| Basis | Claim | Date of Occurrence |
|-------|-------|--------------------|
| Race (Not provided) | Harassment/Hostile Work Environment (Non-Sexual) | January 28, 2022 |

39.   If this information is incorrect, please advise me within five days of receipt of this letter.

40.   I am enclosing the Notice of Rights and Responsibilities and a document entitled "Role I am enclosing the Notice of Rights and Responsibilities and a document entitled "Role & Responsibilities of the EEO Counselor." Please read these documents carefully, sign where indicated, and return a copy, preferably via e-mail to Dennis.Deppen@va.gov or via fax at 727-299-6755 or to the address above.  If you have any questions or need additional information, call me at (888) 566-3982,  Option 1, Ext. 998678.

41.   On June 8, 2022 , Ms. Washington received correspondence stating that her informal counseling was being closed and her complaint was as follows:

| 42.   Bases | Claim | Dates of Occurrence |
|-------------|-------|---------------------|
| Race – Black<br><br>Reprisal-Contact with local EEO office. | Harassment / Hostile Work Environment (Non-Sexual) | 1. On February 11, 2022, LaVetta Jones (Administrative Officer) inform Ms. Washington via questioning for an investigation that Virginia Turner (Nurse Manager) referred to Ms. Washington as an "Uncle Tom". |

| | | 2. On January 21, 2022, Ms. Turner (Nurse Manager) referred to Ms. Washington as a racist term that was identified to Ms. Washington on January 25, 2022, by Jennifer Othersen (Nephrologist) who would not identify the wording used. |
|---|---|---|

43. On June 7, 2022, Mediation was held with the EEO for proposed Resolution of Ms. Washington's EEO complaints against Virgina Turner the factfinder who determined that she would be demoted, Ruthe Mustard, Trish Smith, Tina Washington and Ms. Washington's attorney, Bonnie Travaglio Hunt.

44. On June 8, 2022, Ms. Washington receives her Notice of Right to file Formal Complaint.

45. On June 11, 2022, Ms. Washington filed a formal complaint with the EEO alleging the following:

| BASES | CLAIM | DATE OF OCCURRENCE |
|---|---|---|

| RACE-BLACK HOSTILE WORK ENVIRONMENT HARASSMENT REPRISAL | On February 22, 2022, LaVetta Jones (Administrative Officer) informed Ms. Washington via questioning for an investigation that Virginia Turner (Nurse Manager) referred to Ms. Washington as an "Uncle Tom."<br><br>On January 21, 2022, Ms. Turner (Nurse Manager) referred to Ms. Washington as a racist term that was identified to Ms. Washington on April 6, 2022, by Jennifer Othersen (Nephrologist) who would not identify the wording used.<br><br>On May 9, 2022, VA requested that the no contact order be lifted. The no contact order has kept the individual out of Ms. Washington's workspace but has not kept Ms. Turner from harassing Ms. Washington.<br><br>Ms. Turner has continued to interfere with Ms. Washington's employment from February 2022 to May of 2022. | 2/22/2022<br><br>4/6/2022<br><br>5/9/2022<br><br>2/2022 to 5/2022[1] |

46.    On June 11, 2022, Ms. Washington receives her Letter of Proposed Removal-Title 38 Aggravating and Mitigating Factors (the letter was dated June 11, 2022 but was not signed until 8/23/2022).

47.    During the 2nd week of June 2022, Ms. Washington had a conversation in Ms. Washington's office, Ms. Washington apologized for placing her arm on Mr. Lewis' chest and further informed him that she did not mean to intimidate or assault him.   Mr. Lewis informed Ms. Washington that he never thought that she was assaulting him, he stated that they were getting into his head about what occurred and were pushing him

---

[1] *ROI page 4.*

to report it.   Ms. Washington apologized and Mr. Lewis stated that is all that he wanted, and that he was concerned that she was not aware of what was going on and he was concerned.    Ms. Washington and Mr. Lewis continue to have a good working relationship.

48.    On June 13, 2022, Ms. Washington's formal complaint is accepted.

49.    On July 15, 2022 , Ms. Washington's allegations contained in her June 11, 2022, formal complaint were reduced to:

Attached to her VA Form 4939, your client raised the following matters not discussed during informal counseling:

a.   From February 2022 through May 2022, Ms. LaVetta Turner, Nurse Manager has continued to interfere with your client's employment. (no details provided)

b.    On May 9, 2022, an April 4, 2022, "No Contact Order" issued to your client, was rescinded.

50.    On July 22, 2022, Ms. Washington's attorney sent a letter to Robbie C. Barham, District Manager, Department of Veteran Affairs stating the following:

Please be aware that my client has received your letter of July 15, 2022 setting forth the Notice of Partial Acceptance.  Please be aware that first and foremost the Agency set forth the wrong names in the claims.  In Paragraph 2 of your letter is states "Attached to her VA form 4939, your client raised the following matters not discussed during her informal counseling:  a.  From February 2022 thorugh May 2022, Ms. LaVenta Turner, Nurse Manager has continued to interfere with your client's employment.  (no details provided) and b.  On May 9, 2022, an April 4, 2022, "No Contact Order" issued to your client was rescinded."   As you are aware the actual document set forth the following:

On February 22, 2022, LaVetta Jones (Administrative Officer) informed Ms. Washington via questioning for an investigation that Virginia Turner (Nurse Manager) referred to Ms. Washington as an "Uncle Tom."

14

*On January 21, 2022, Ms. Turner (Nurse Manager) referred to Ms. Washington as a racist term that was identified to Ms. Washington on April 6, 2022, by Jennifer Othersen (Nephrologist) who would not identify the wording used.*

*On May 9, 2022, VA requested that the no contact order be lifted. The no contact order has kept the individual out of Ms. Washington's workspace but has not kept Ms. Turner from harassing Ms. Washington.*

*Ms. Turner has continued to interfere with Ms. Washington's employment from February 2022 to May of 2022.*

*Your letter failed to state these facts correctly and confused the names of the individuals involved.*

*Second, the incidents provided to your office in this letter are directly related to the overall work environment Ms. Washington was subjected to and are directly linked to the actions by Ms. Turner. Therefore, these claims should not be dismissed as unrelated. Ms. Washington cannot be held responsible for the failure of the EEO counselor to thoroughly vet the claim for harassment and hostile work environment. As you are aware the claim for hostile work environment pursuant to the Court's interpretation is not limited to one or two events but is a compilation of actions over a period of time that no reasonable person would stand for. Ms. Washington's work environment was and continues to be retaliatory and hostile. Ms. Washington was clear in her interview in her initial contact that the actions of the individuals involved was a continuing action and not limited to 2 incidents.*

The claims should be immediately reinstated as related circumstances to the hostile work environment.

If you have any questions or require further information, please do not hesitate to contact me.

51.    On July 26, 2022, Ms. Washington received a letter setting forth the following from

the District Manager:

*SUBJECT: RESCINDED Notice of Partial Accepted and CORRECTED Notice of Acceptance of EEO Complaint, Tina Washington, Case No. 200I-544-2022-145977, filed June 11, 2022, against officials of the VA Medical Center in Columbia, SC*
*1. The purpose of this letter is to RESCIND Notice of Partial Acceptance letter dated July 15, 2022; and to issue a CORRECTED Notice of Acceptance to provide correction related to the accepted discrimination claim listed below in paragraph 3.*
*3. Your client's complaint of discrimination raises the following claims:*
*Whether complainant was subjected to a hostile work environment, based on race (black) and reprisal (EEO activity), as evidenced by the following events*

15

*1) On January 21, 2022, Ms. Virginia Turner, Nurse Manager, referred to complainant as a racist term that was identified to complainant on April 6, 2022, by Jennifer Othersen, Nephrologist who would not identify the wording used.*
*2) From February 1, 2022, to May 31, 2022, Ms. Turner has continued to interfere with complainant's employment.*
*3) On February 22, 2022, LaVetta Jones, Administrative Officer, informed complainant, that Ms. Turner, referred to complainant as an "Uncle Tom.*
*4) On May 9, 2022, VA requested that the no contact order be lifted. The overall claim of hostile work environment is ACCEPTED for investigation and further processing.*

52.   On July 27, 2022, Ms. Washington filed her formal complain in this case 2001-544-2023-148707.

53.   On August 23, 2022, Ms. Washington receives the signed letter of Proposed Removal.

54.   On September 19, 2022, Ruth Mustard drafts the proposed demotion under the Authority of 38, USC Ch 74.

55.   On September 23, 2022, Mustard contacted Ms. Washington and instructed her to set up a meeting for pending disciplinary action.

56.   On September 26, 2022, the Proposed Removal is presented to Ms. Washington by Rule Mustard. Ms. Washington was given two packets of information and required to sign. Ms. Washington stated she had questions but Mustard's response was that she only recommended the proposal for demotion and that it had to be approved by the director. Ms. Washington asked Mustard who did the investigation whereupon Mustard informed her that Turner and the police officers conducted the investigation. Ms. Washington reviewed the documents and had several concerns especially regarding that there was no factfinding, there were several inconsistencies and documented issues regarding Ms. Washington's character with no personal knowledge.

57.   October 7, 2022, the Demotion is issued and is to take effect November 6, 2022.

58.    October 14, 2022, David Omura followed the recommendation of Mustard and demoted Ms. Washington.

59.    On October 21, 2022, Ms. Washington filed a Formal Grievance of Demotion under Authority 38 USC Ch 74.   The Grievance set forth the following:

*Specific Action Grievance is Based:  Demotion Under Authority of 38 USC Ch 74 issued October 7, 2022. Demotion from Registered Nurse, Assistant Manager, Grade VN-02, Step 06, position number 91381756, to Registered Nurse, Staff-Mixed, Grade VN-02, Step 06, position number 91060724.*
*Reason for Grievance:  The Deciding Official lacked evidence of the Douglas Factors thereby making the Demotion excessive and unwarranted under the policies and procedures of the Agency.*
*Personal Relief Requested:        Any and all discipline from the incident is stricken from Nurse Washington's permanent record.  The Demotion be reversed, and Nurse Washington remains in the Assistant Nurse Manager position.*

60.    On January 15, 2023, Ms. Washington's informal counseling was closed.

61.    On January 26, 2023, the discrimination complaint for 200I-544-2023-148707 was officially filed.

62.    On February 28, 2023, a EEO Investigatory was assigned to Ms. Washington's formal complaint.

FACT FINDING REPORT

*Since three of the four people interviewed were visibly upset. Two cried during the interview actual tears and other was afraid to even enter the room for fear of reprisal. The panel feels this shows the current state of the unit and that the environment is taking its toll on the employees.  Our conclusion on the items listed in our charge letter are:  Attempts to force resignation by pressuring Tina Washington to voluntarily give up her position of employment.  During interviews, the acting Nurse Manager (NM-acting) denied the allegation. The Assistant Nurse Manager (ANM) stated attempts to force her resignation to be true in a written statement, and later clarified in a fact-finding interview that the forced resignation was a visual nod by Turner in answer to The attending physician stated that she was verbally informed by the acting nurse manager on two occasions that Turner told Washington she needed to resign because of an ongoing and separate fact-finding investigation involving alleged violence in the workplace.*
*Follow-on written statements specific to this fact finding were submitted were compelling and reasonable. Directing staff not to contact Tina Washington for routine*

10

*work assignments, instructions, etc.; instead, directing staff to contact her (Virginia Turner).*

*During interview NM-acting denied the allegation. ANM noted, in her written statement, that staff were told not to contact her by Turner. During the interview it was discovered that another nurse that was not selected for the ANM role in the past (Demetria Capone) as the source of information on that occasion and other occasions. It was also noted that was causing racial division and actively undermining ANM management authority within the Hemodialysis unit over the last two years.*

*Statements provided in interviews within the scope of this fact finding clearly identify past and persistent barriers to effective unit management and leadership, and a culture promoting divides among this small unit technical staff.*

*Use of racial jokes, slurs, epithets, ridicule or mockery, insults, or put-downs in conversations with staff to include but not limited to describing race relations on the Dialysis Unit as a divide between the Black nurses and the elite nurses and referring to Tina Washington as an Uncle Tom.*

*Racial tension and bias were dismissed by one witness but identified and documented by other witnesses in their written statements and interviews, as prevalent and continuing in the unit for at least the last two years after NMacting assumed leadership. The situation has apparently intensified in the last six-eight months according to All staff interviewed referenced past and ongoing associated AIBs, fact findings, other attempted union grievances and investigations outside the scope of this fact finding contributing to a workplace where employees noted they feel divided, threatened, fearful, and sad. If Virginia Turner's leadership style has perpetuated division among the staff and/or negatively affects the functionality of the Dialysis Unit. Past and ongoing associated investigations outside the scope of this fact finding contributing to a workplace where VA employees noted they feel physically and mentally threatened, fatigued, fearful of workplace reprisal, bullied and sad. Witnesses noted they are considering leaving the VA or retiring sooner as a response of the staffing difficulties in the Hemodialysis unit. It is our understanding that these concerns have been voiced to VA leadership, and the onsite union representing eligible Hemodialysis unit staff, based on interviews A culture appears to be present in the unit that is causing past and ongoing division between VA staff to include the attending physician, acting nurse manager, assistant nurse manager, charge nurses and technicians. Chain of command, real and apparent authority of staff, effective lines of communication, challenges to appropriate skill sets and responsibility for tasks have been, and continue to be, questioned by unit staff. The internal challenges and conflict within this unit has been alleged to currently be impacting and effecting job performance and stress levels of shared staff in the renal and pulmonary unit as well.*

*RECOMMENDATIONS:*

*The working relationship between those in key leadership positions has eroded over the past two years and appear to have rapidly declined within the last six months based on the written and verbal disclosures evident for this fact finding. Their relationship has had an impact on the Hemodialysis staff to include a racial divide among staff with emphasize on the last six to eight months. A volatile workplace culture appears to be present in the unit that is causing past and ongoing division between VA staff to include the attending physician, NM-acting, ANM, nurses and technicians. Effective daily*

*chain of command, real and apparent authority of nursing staff, effective lines of communication, challenges to appropriate skill sets, and responsibility for unit tasks have been and continue to be questioned by VA staff associated with the Hemodialysis unit. To assist with this issue, it is recommended that leadership be clearly defined to include roles and responsibilities. That the issues be addressed by leadership to include racial discrimination and what will not be tolerated by leadership. Also, periodic meetings (monthly/weekly) with all Hemodialysis staff to include physician, need to occur in attempt to rebuild lines of communication and show efforts of the three in leadership to improve the unit.*

*The internal challenges and personal conflict within this unit appears to be migrating out of and impacting individual job performance and heightened stress levels of shared staff in the renal and pulmonary units.*

*Effective leadership and a psychologically safe workplace for staff in this unit appears to be absent. One recent event of a physical altercation has been documented, although its connection to this fact-finding charge is both relevant and anecdotal. Written and verbal statements disclosed during this fact finding identify issues and concerns exceeding the scope of this charge. Statements disclosed during this fact finding identify issues and concerns exceeding this fact finding scope and have been long standing. Information obtained in interviews during this fact finding exceed the present scope of this fact-finding charge but are immediately actionable by leadership. It is our recommendation that these concerns be addressed in a timely manner since the unit has been identified as a workplace where VA employees noted they feel personally and professionally divided, threatened, and depressed, and are fearful of reprisal and retaliation from voicing concerns about current Hemodialysis leadership and possibly staff.*

63. That each of the reasons provided by the Defendant for not hiring, promoting, or fixing the Plaintiff's work environment was meant to harass the Plaintiff, harm the Plaintiff and retaliate against the Plaintiff.

64. That Defendant wrongfully discriminated by disciplining him by terminating his employment in violation of Title VII, ADEA and ADA.

65. That each of the reasons presented by the Defendant was pretextual.

66. Defendant's actions described herein were intentional and inflicted upon Plaintiff severe mental and emotional distress.

67. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, loss of promotion, loss of benefits and other economic

losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which he should be compensated.

68. That the Defendant is the direct and proximate cause of injury to the Plaintiff.

69. That the Plaintiff was issued certain policies and procedures by the Defendant.

70. The Defendants violated the policies and procedures by failing to follow the actual policies in place against discrimination, hostile work environment and retaliation.

71. That as a result of Defendant's actions regarding retaliation, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated.

72. Defendant engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of her race, and retaliation for her complaints.

73. That the Defendant, treated the Plaintiff significantly differently based on her race, and reprisal/retaliation for his complaints.

74. That the Plaintiff's coworkers were treated more favorably in evaluations, promotion, work assignments, work enviroment and employment.

75. That the Defendant's actions towards the Plaintiff violated the law.

76. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

77. That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's race, the Plaintiff:

    a.     Suffered lost wages and benefits;

    b.     suffered severe emotional distress;

    c.     suffered future lost wages and future lost benefits;

    d.     suffered economic damages;

    e.     changes in the terms and conditions fo employment;

    f.     harassment and hostile work environment;

    g.     Demotion;

    h.     Failure to pay proper wages for work performed;

    i.     Loss of employment;

    j.     Loss of Future employment;

    k.     incurred attorney fees for this action;

    l.     incurred costs of this action; and

    m.     will incur future attorney fees and costs.

78. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

79. That the Defendant evaluated the plaintiff differently based on her complaints and race.

80. That the Plaintiff's employer discriminated against the Plaintiff based on her race and complaints.

81. That the Defendant, failed and refused to treat all persons the same.

82. That the Defendant failed and refused to allow the Plaintiff any changes in the terms and conditions of her employment.

83. That the Defendant is the proximate and direct cause of damage to the Plaintiff.

84. Pursuant to Title VII, Plaintiff also seeks compensatory damages including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

85. Plaintiff seeks all back pay and fringe benefits to which she is entitled under the law, as well future damages, and liquidated damages under the act.

86. As Plaintiff is seeking damages under Title VII for race pursuant to the law and Plaintiff also demands a jury trial as to all claims properly tried to a jury pursuant to Title VII.

## FOR A FIRST CAUSE OF ACTION
## RACE AND SEX DISCRIMINATION IN VIOLATION OF TITLE VII

87. That Paragraphs one (1) through eighty-six (86) are hereby incorporated verbatim.

88. That the Plaintiff has been treated differently based on her race by the Defendant.

89. That the Plaintiff was subjected to discriminatory commentary regarding her race, discriminatory commentary and hostile work environment.

90. That the Plaintiff was treated less favorably than Caucasian employees.

91. That the Caucasian employees were not subjected to the same discipline or commentary of the Plaintiff.

92. That the Plaintiff participated in a protected act when she reported discrimination, harassment, and hostile work environment.

93. That the Defendant allowed the Plaintiff to be discriminated against based on her race in violation of their own policies and procedures and the law.

94. That the Plaintiff reported the discrimination. That the Defendant failed and refused to correct the behavior.

95.   That the Defendant allowed the Plaintiff's supervisor to treat Caucasian employees more favorably without repercussions and retaliate against the Plaintiff by creating a severe and pervasive retaliatory hostile work environment.

96.   That the Defendants discriminated against the plaintiff based on her race and sex.

97.   That the Defendants took adverse employment action against the Plaintiff by:

   (a)   Failing to protect the Plaintiff from a Racially Hostile work environment; and

   (b)   Refusing to enforce its own policies concerning discipline of employees and their discrimination against others.

98.   That the Defendants subjected the Plaintiff to discrimination in violation of the law.

99.   That, as a direct and proximate result of the Defendants' intentional, unlawful and retaliatory actions, the Plaintiff:

   (a)   Suffered severe emotional distress;

   (b)   Suffered lost wages and benefits;

   (c)   Suffered future lost wages and benefits;

   (d)   Incurred attorney's fees and costs of this action.

100.   That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, attorney's fees, costs of this action, and other damages such as this Honorable Court deems appropriate and just.

## FOR A SECOND CAUSE OF ACTION

## REPRISAL/ RETALIATION FOR COMPLAINTS REGARDING RACE DISCRIMINATION

101.   That Paragraphs one (1) through one hundred (100) are hereby incorporated verbatim.

23

102. That the Plaintiff is an employee as defined by Title VII.

103. That the Defendant is an employer as defined by Title VII and subject to the laws and policies and procedures of the federal government.

104. That the Plaintiff has filed complaints regarding race discrimination, and harassment/hostile work environment to management. As a result of those complaints the Plaintiff was not provided proper pay despite performing the position, not promoted, not allowed to laterally move to another position or receive positive evaluations, disciplined and demoted from her position.

105. As a result of those complaints the plaintiff has been treated differently and subjected to retaliation.

106. That the Plaintiff has made continuous complaints of discrimination based on race and hostile work environment, including differential treatment, failure to hire, failure to promote and hostile work environment at the facility.

107. That the Defendant retaliated against the Plaintiff by placing her in the most hostile work environment and providing her with a unreasonable evaluations to prevent promotion, negatively affecting her ability for promotion, demoting her and rebuffing her complaints.

108. That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of her complaints.

109. That the Plaintiff was considered an exemplary employee by many of her supervisors until the Plaintiff filed complaints regarding discrimination and differential treatment in the work environment.

110. As a result of the Plaintiff's complaints regarding discrimination based on her Race, and hostile work environment the Plaintiff was subjected to changes in terms and conditions and terminated.

111. The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

112. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated. Including, future losses related to refusals to provide appropriate raises and positions.

113. That the Defendant is the direct and proximate cause of injury to the Plaintiff.

114. That the Plaintiff is entitled to an award of damages from the Defendant. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Federal Law.

## FOR A THIRD CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

115. That Paragraphs one (1) through one hundred and fourteen (114) are hereby incorporated verbatim.

116. That the Plaintiff was an employee of the Defendants.

117. That the Defendant is an employer in accordance with Title VII.

118. That the Defendant subjected the Plaintiff to a hostile work environment.

119. That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

120.    The Plaintiff was subjected to discrimination based on her Race.

121.    That the Defendant failed and refused to address the situation.

122.    That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's Race.

123.    That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

124.    That the Plaintiff has been damaged as a result of the Defendant work environment.

125.    That the Defendant is the direct and proximate cause of damage to the Plaintiff.

### **PRAYER FOR RELIEF**

WHEREFORE plaintiff prays that this Honorable Court:

A.  Accept jurisdiction over this matter, including the pendent claim;

B.  Empanel a jury to hear and decide all questions of fact;

C.  Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D.  Award to plaintiff compensatory and consequential damages against the defendant;

E.  Award to plaintiff punitive damages against the defendant for their malicious and spiteful pattern of sexual discrimination;

F.   Award to plaintiff All damages available to the plaintiff damages against the defendant for their malicious discrimination against the plaintiff in violation of Title VII;

G.  Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

H.  Award all damages available to the Plaintiff pursuant to Federal Law;

I.   Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in discrimination, disparate treatment or retaliation against plaintiff and

J.   enter any other order the interests of justice and equity require.

HUNT LAW LLC

_s/Bonnie Travaglio Hunt_
Bonnie Travaglio Hunt
HUNT LAW LLC
4000 Faber Place Drive, Suite 300
North Charleston SC 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709

Dated:  August 4, 2025